## McBRYDE SUGAR COMPANY, LIMITED, *v.* KOLOA SUGAR COMPANY.

### APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

ARGUED JUNE 1, 2, 1908.                    DECIDED JUNE 22, 1908.

HARTWELL, C.J., WILDER AND BALLOU, JJ.

EQUITY—*jurisdiction.*

> Equity has jurisdiction to enjoin the diversion of water long used under claim of right, upon proper proof of that right, which jurisdiction is not ousted by the creation of a statutory tribunal with authority to decide water controversies.

EQUITY—*parties.*

> A bill is not demurrable because a person against whom no relief is sought and who, upon the allegations, asserts no right adverse to the plaintiff, has not been made a party.

EQUITY—*pleading.*

> A bill for an injunction is not demurrable because certain matters are alleged as averments of fact based upon information and belief.

McBryde Sugar Co. v. Koloa Sugar Co., 19 Haw. 106

OPINION OF THE COURT BY HARTWELL, C.J.

This was a bill praying for a temporary injunction to restrain the defendant from continuing to molest, interfere with or obstruct the natural flow of the waters in the easterly branch of the Omao stream as the same flowed prior to December 20, 1907, and from otherwise in any way diverting or appropriating the waters thereof and from continuing to maintain certain dams referred to in the bill, and from maintaining any dams, ditches, flumes or tunnels or other means of carrying or diverting the same water or from continuing to interfere with the plaintiff's use of its right of way along the easterly branch of the stream until further order of the court, and that upon final hearing the injunction be made permanent.

The bill avers that the petitioner is informed and believes and on such information and belief alleges that December 18, 1874, Annie Knudsen, owner of the ahupuaa of Koloa and of all the konohiki water rights appurtenant thereto by ancient custom, leased to James W. Smith certain parts of the ahupuaa for twenty-three years; that the lease was made for the cultivation of sugar cane and under it the lessee and his successors in title began and established a sugar planting interest upon the demised premises as well as upon certain other lands owned or thereafter acquired by him in fee simple; that under and by virtue of said lease and by virtue of the ownership of the fee simple lands said James W. Smith was entitled to appropriate, enjoy, dispose of, control and use, and by and in building up said planting interests came by the year 1880 or thereabouts to appropriate, dispose of, control, enjoy and use upon the demised premises and his said fee simple premises, among other waters and streams, all of the water and water rights of the Omao stream and all branches thereof including their konohiki water rights, and otherwise to control all of the normal and freshet waters thereof including the right to the uninterrupted

flow of all the waters of said stream and its branches, including the freshets thereof, without any upper or higher diversion or interruption on the part of said Annie Knudsen or any person claiming under her or otherwise;

That the petitioner is informed and believes and on such information and belief alleges that said exclusive use, control and enjoyment of all said waters and water and konohiki rights by said James W. Smith continued continuously and exclusively in him and his successors in title under and by virtue of said lease and the ownership of said lands by him, and a further lease dated February 4, 1896, from the same lessor to Jared K. Smith for a term of nineteen years from September 1, 1896; that the successors in title under the first lease and to the fee simple lands of James W. Smith were a copartnership known as A. H. Smith & Co., and that during the year 1890 they, by virtue of said original lease and ownership of said fee simple land, had in possession, disposed of, controlled and used in connection with the fee simple land and leasehold lands and owned, among other waters and stream, all of the water and water rights of the said Omao stream and its branches including the freshets flowing in the same and all the konohiki rights in the waters thereof and had all of said water rights in possession during said year of 1890 as first takers thereof without other or higher interruption or diversion by said Annie Knudsen or any one claiming under her or by any other person or corporation; that by the lease of February 4, 1896, said Annie Knudsen leased to Jared K. Smith all the premises and waters and water and konohiki rights theretofore held, enjoyed and controlled by said James W. Smith and his successors in title under said original lease, said Jared K. Smith taking the second lease in trust for the benefit of himself, Emma C. Smith and Anna Juliette Smith then owning the original lease and the said fee simple lands of James W. Smith; that September 4, 1896, said Annie Knudsen, then being owner in fee simple

of the ahupuaa of Koloa, sold and conveyed in fee simple to Jared K. Smith, Emma C. Smith and Anna Juliette Smith all the lands and hereditaments situate in Koloa, describing the same by metes and bounds, which comprised the premises leased by the lease of February 4, 1896;

That the petitioner is informed and believes and on such information and belief alleges that at the time of said conveyance all of the water and water rights in said Omao stream and its branches, including the freshet water thereof as well as other waters and stream together with all the konohiki rights therein, except so much as was appurtenant by prescription to said fee simple lands, were being held, enjoyed, controlled, disposed of and used by said Jared K. Smith, Emma C. Smith and Anna Juliette Smith upon and in connection with the premises conveyed to them in fee by the deed of September 4, 1896, and that all the said waters and water rights and the konohiki rights therein, including the right to control and dispose of the surplus and freshet waters thereof subject to an exception as to the fee simple lands, then appertained to and were being held, enjoyed and used with the premises so conveyed and as a part thereof and passed to and were conveyed thereby in fee to the grantees including the right to an uninterrupted flow of all the waters of said stream and branches without upper or higher diversion or interruption by said Annie Knudsen or any one else, and thereafter continuously hitherto all said waters, water rights and konohiki rights in said stream and its branches have been openly, continuously, exclusively and under claim of ownership used, enjoyed, controlled and disposed of by the said grantees and their successors in title to the lands conveyed by said deed and to the lands held originally in fee simple by said James W. Smith, and that the said konohiki rights and the right to said waters constituted a vital and essential part of the consideration and inducement which led the grantees to pay the grantor the sum of $30,000 as con-

sideration for said deed; that by a series of mesne conveyances all the lands, easements, water rights and property acquired by the grantees under said deed and all of the lands owned in fee simple by said James W. Smith became the property of and now are owned in fee simple by the plaintiff and have been used, enjoyed, controlled and disposed of by it absolutely as it sees fit, except the Bindt lot, so-called, containing 4.03 acres, and certain water rights for use of the Smith homestead and then used through certain pipes, flumes and ditches; that September 20, 1907, while plaintiff was in the exclusive, undisputed and peaceful use, possession, control and enjoyment of said waters and konohiki rights, the defendant, without prior notice or demand, seized and appropriated all of the water of the easterly branch of the Omao stream and by means of two dams and a tunnel diverted all of the water of the said stream to its premises adjacent to the plaintiff's lands and has since continuously diverted and appropriated all of the water of said stream and allowed none of it to go down its ancient course to the Omao river and has wholly deprived the plaintiff of the use and enjoyment thereof and threatens to continue said diversion and appropriation;

That plaintiff is informed that the defendant claims that said stream rises on certain portions of the ahupuaa of Koloa which are leased to it and that by virtue of a lease from Annie S. Knudsen of August 26, 1890, it is entitled to all of the konohiki rights of the ahupuaa of Koloa and by virtue of said konohiki rights and certain water rights acquired from native kuleana holders below that it is entitled to appropriate the water, and in so doing that it has not taken more than its fair share of the water of Koloa; and further that many years ago some person unknown to the plaintiff used such a ditch at the point in question and took waters from said stream thereby and that a few years since one Rego while cultivating cane upon the defendant's land, with its permission, placed a dam in said

easterly branch of said Omao stream and took water therefrom;

Whereas plaintiff says that for over twenty years said easterly branch has been used exclusively, openly and continuously and under a claim of right by the plaintiff and its predecessors in title and not at all by the defendant or any one else, except that said Rego some years ago while planting cane for himself on the defendant's land surreptitiously and without claim of right led water out of said stream and used part of it on his cane, at which time Weinzheimer, now manager of the defendant corporation, then an overseer of its lands, tore down the dam and returned the water to its ancient course, and upon interrogation McLane, then manager of the defendant corporation, admitted to the plaintiff that the attempted diversion of said water was unlawful and promised Stodart, manager of the plaintiff corporation, that it would not take place again; that otherwise the plaintiff has had exclusive and undisputed use of said stream since its purchase and that it bought the land and water rights in question from the Koloa Agr. Co. upon the faith and in the belief that it was entitled to all the waters and water and konchiki rights of said easterly branch of Omao as well as the main stream of Omao; that upon the plaintiff discovering the said diversion of water by the defendant one of said dams was, January 29, 1908, torn down and the water returned to its ancient channel and to the use, possession and control of the plaintiff; that upon the following night the defendant reconstructed the dam and renewed the diversion of water; that the plaintiff's servants and agents, under its instructions, then proceeded along the easterly branch of the Omao stream in lawful, peaceful and proper use of plaintiff's right of way up and along said stream with the intention of tearing down the dams, but upon arriving there found it covered with Japanese, the defendant's servants, who with force and

arms resisted the attempts of plaintiff's employees to remove the dams and turn the water back into its ancient channel;

Plaintiff denies the truth of any of defendant's contentions as to its right in the easterly branch of the Omao stream or its right to divert the waters thereof, except as above set forth;

That by reason of the premises the petitioner is suffering and has suffered great and irreparable damages in that said water is appurtenant to and necessary to the proper maintenance of its cane fields upon its lands at Koloa and that without the water irreparable damage will be done to the cane fields from the petitioner's inability to acquire and store water against the dry months now near at hand whereby great injury and depreciation will be caused to its crops which cannot properly be computed or valued in money, and that the petitioner has no adequate remedy at law in the premises and that it apprehends serious loss and damages by the diversion of water which the petitioner says amounts under normal conditions to one million gallons a day and is worth in fee $30,000; that upon erecting the dams and tunnel the defendant thereby diverted the whole of the easterly branch of the Omao stream and left no water at all to the petitioner, in violation not only of its prescriptive rights but of the ancient water rights of the land of Omao and the lands and property acquired by the petitioner from the Koloa Agr. Co., and that unless the defendant is restrained great and irreparable injury will ensue to the petitioner in the loss and diversion of said waters and in the obstruction thereto and in depriving the petitioner of the use of said right of way, the petitioner having planted its said lands in cane at Koloa relying in part upon said supply of water for the maintenance thereof and that the area planted in cane upon its Koloa lands and now growing thereon would not have been planted nor would there have been justification for planting of the same in full but for reliance upon the waters of the easterly branch of the Omao stream as well as other water supplies owned by

it and in its use and possession, and that it is too late in the season to develop an alternative or substitute supply, and that said waters of the easterly branch have been used openly, continuously and adversely for over twenty years in the cultivation of cane by the petitioner and its predecessors in title upon said Koloa lands held in fee by the petitioner.

The written instruments referred to in the bill are (a) the lease of December 18, 1874, from Mrs. Annie Knudsen to James William Smith for twenty-three years from January 1, 1875, of "all the lands of Koloa Komohana, Aepo and Kaohe situate at said Koloa and bounded east by Koloa Hikina and the Mission premises—north by the Meeting House Lot—the cemetery and lands leased by R. W. Wood, west by Land called Keekee, south by the Sea, reserving however Kuleanas and Lot leased to J. D. Neal by Lot Kamehameha under lease dated 17th day of August A. D. 1861 for 20 years;" (b) lease of February 4, 1896, from Mrs. Annie Knudsen to Jared Knapp Smith for nineteen years from September 1, 1896, of "all that land except as hereinafter mentioned situate at said Koloa, and known as the Ahupuaa of Koloa, and also all portions of land and any kuleanas within the said Ahupuaa that have up to the date of these presents been purchased in any manner since the vesting in fee of the said Ahupuaa in the party of the first part, excepting all such portion, parts and parcels of land of the said Ahupuaa of Koloa as are held by the Koloa Sugar Company under lease dated the twenty-sixth day of August A. D. 1890, and recorded in Liber 128 on pages 304, 305 and 306, it being understood that all kuleanas not owned by the party of the first part are expressly excepted;" (c) conveyance of September 1, 1896, by Annie S. Knudsen to Jared Knapp Smith, Emma C. Smith and Anna Juliette Smith, for a consideration of $30,000, of "all and singular the lands and hereditaments situate in said Koloa, and described by metes and bounds in the Schedule hereunder written, excepting Kuleanas not owned

by the grantor, and being all of the same premises leased by the grantor to said Jared Knapp Smith by lease dated the fourth day of February, 1896, surrender of which said lease is hereby made by said Jared Knapp Smith and accepted by said grantor.    To have and to hold the premises hereinabove granted and conveyed or expressed and intended so to be together with all the rights, easements, privileges and appurtenances thereunto in any wise belonging or appertaining unto the said grantees their heirs and assigns forever."    The deed contains covenants of seizin in fee simple; good right to sell and convey; that the granted premises are free from all encumbrances, and of general warranty; (d) lease of August 26, 1890, from Annie S. Knudsen to the Koloa Sugar Co. for twenty-five years from September 1, 1890, of "that certain piece or parcel of land situate at Koloa Island of Kauai and known as the Ahupuaa of Koloa and also all portions of land or any Kuleanas within the said Ahupuaa, that have up to the date of these presents been purchased in any manner since the vesting in fee of the said Ahupuaa of Koloa in said party of the first part, except all such portions, parts or parcels of land of the said Ahupuaa of Koloa as are held in possession of A. H. Smith & Co., at the date of these presents, and except the parcel of land in said Ahupuaa known as the 'Bindt Lot' and furthermore except that certain parcel of land in said Ahupuaa held as a teacher's house lot, and it being understood that all Kuleanas not owned by the party of the first part are expressly excepted."

The defendant demurred to the bill on the grounds:

"I.    That said bill of complaint does not state facts sufficient to entitle plaintiffs to the equitable relief sought, or to any equitable relief;

"II.    That said complaint does not allege in positive and direct terms the facts upon which the prayer for relief is predicated.

"III.    That the facts alleged by plaintiff upon information

and belief do not disclose the source of information or nature of belief and are not charged to rest within the defendant's knowledge and not within the knowledge of the plaintiffs.

"IV.   That the matters in said complaint alleged on information and belief do not show that positive knowledge is not attainable or and that danger of injury is immediate.

"V.   That said bill is uncertain and indefinite in this that paragraph two (unnumbered) of said bill upon which the so-called prescriptive right of plaintiff is predicated does not show or purport to show the source of complainant's information, the nature of the belief, nor does it show the manner in which said alleged 'Konohiki' water rights were acquired, nor does it show the branches of Omao stream.

"VI.   That said bill of complaint affirmatively discloses a nonjoinder of parties defendant, to-wit, said Annie Knudsen.

"VII.   That paragraph four (unnumbered) of said bill is insufficient in law and uncertain in this that. the allegations thereof are predicated upon information and belief and do not disclose the source and nature of such information and belief.

"VIII.   That paragraph five (unnumbered) of said complaint is indefinite and uncertain in that it does not disclose or purport to disclose the nature of said 'mesne conveyances' by whom made and the rights acquired thereby.

"IX.   That the Court is without jurisdiction to hear and determine the matters in said bill of complaint alleged."

The circuit judge overruled the demurrer and granted the prayer for a preliminary injunction. The defendant appealed from the decree overruling the demurrer.

The defendant contends that the circuit judge of the first circuit has no jurisdiction in equity over a water controversy relating to lands on Kauai, although it is conceded that if the bill had been brought for a temporary injunction until determination of a proceeding at law this objection might not have been good; but, the argument is, the bill seeks to try the title to the waters, and Act 56 S. L. 1907 makes it the duty of the circuit judges "within their respective circuits to hear and determine all controversies respecting rights of private ways

and water rights." Sec. 1833 R. L. gives to circuit judges original and exclusive jurisdiction of every original process in which relief in equity is prayed for except when a different provision is made; Sec. 1834 provides that they may hear and determine in equity all cases thereinafter mentioned "when the parties have not a plain, adequate and complete remedy at the common law," and that they "shall have full equity jurisdiction according to the usage and practice in courts of equity in all other cases where there is not a plain, adequate and complete remedy at law;" by Sec. 1648 they have power at chambers within their respective jurisdictions "to hear and determine all matters in equity." The exercise of this power is not limited to cases arising within the respective circuits as is done in divorce, probate, guardian and partition matters.

*Wailuku Sug. Co. v. Cornwell,* 10 Haw. 476, approved in 13 Haw. 195 and 14 Haw. 550, held that the jurisdiction of a commissioner of water rights over a water controversy does not exclude equity jurisdiction over water rights. Act 56 S. L. 1907, giving to circuit judges "jurisdiction to hear and determine all controversies respecting rights of private ways and water rights" and making it "the duty of said judges, within their respective circuits, to hear and determine all controversies respecting rights of private ways and water rights," transfers to circuit judges the jurisdiction in those matters formerly exercised by commissioners of water rights. The original statute, S. L. 1856 p. 16, provided for commissioners to hear and determine all controversies respecting rights of way and to "give such decision as might in each particular case appear to them to be just and equitable;" by act of August 28, 1860, S. L. 1860 p. 12, they were given power to hear and determine all controversies respecting rights of water. It was not the intention of the legislature that the jurisdiction of the commissioners should supersede the general jurisdiction of equity over such controversies, but merely that a simple, expeditious and

McBryde Sugar Co. v. Koloa Sugar Co., 19 Haw. 106.

inexpensive tribunal should be created to determine these matters without a jury and without the formal procedure of equity. A water controversy may involve equitable as well as legal rights. It may amount to a mere trespass. The fact that the law afforded a sufficient remedy in damages would not have excluded the jurisdiction of the commissioners in water controversies. Nor under Act 56 would a circuit judge have jurisdiction in only such cases as could be brought in equity. The transfer to circuit judges of the commissioners' previous jurisdiction over water controversies does not do away with their equity jurisdiction in such cases. They now hear and determine water controversies relating to property within their circuits, using the procedure provided by statute for such cases and still have general equity powers which they exercise "according to the usage and practice of courts of equity" when the parties have not a "plain, adequate and complete remedy at the common law," whether the case relates to property within their circuits or not. *Dole v. Gear,* 14 Haw. 564.

We do not regard the decision in the *Cornwell* case as resting solely on the ground that the "creation of a special tribunal to hear a certain class of cases does not necessarily oust the jurisdiction of the superior courts."

"It is a general principle, often followed by this court, that if equity jurisdiction exists in the absence of a statutory remedy at law, it is not taken away by the grant of such a remedy. The jurisdiction in equity does not cease and revive from time to time with the enactment and repeal of statutes which confer a remedy at law." *Dole v. Gear,* 14 Haw. 564.

Under Sec. 1833 R. L. the jurisdiction is exclusive "except when a different provision is made," but Sec. 1834 includes all the cases therein mentioned when the remedy at common law is inadequate, as well as all other cases where the remedy at law, meaning by statute as well, is inadequate. The cases include suits concerning nuisance. It is a private nuisance to

divert or obstruct a water course.   *Gardner v. Newburgh,* 2 Johns. Ch. 164.

In *Parker v. Winnipiseogee Lake Co.,* 2 Black, 545, the plaintiff brought a bill to restrain the defendant from taking the waters of the lake to supply the Merrimac river in time of drouth in order to secure a sufficient motive power for manufacturing establishments on the river to the plaintiff's injury and damage in the use of the water to which he claimed to be entitled.   It was urged at the hearing that the plaintiff had not established his right by an action at law, and although the objection was not taken by demurrer or in the answer, the court held that, being a jurisdictional objection, it might be enforced by the court sua sponte though not raised by the pleadings nor suggested by counsel.   Treating the case as a private nuisance the court held that "the concurrent jurisdiction of courts of equity in cases of private nuisance dates back to an early period in the growth of the English equity system," and that "it is now too firmly established to be shaken," but that "the case must be one of strong and imperious necessity or the right must have been previously established at law."

The case of *Harman v. Jones,* Cr. & Ph. 301; 41 Eng. Rep. 505, which is cited by the defendant in support of the claim that only the circuit judge of the fifth circuit has jurisdiction and that the case is triable not in equity but only under Act 56, illustrates the rule that when equity is asked to protect legal rights which are disputed they are required to be established at law, an injunction being granted temporarily to prevent irreparable injury pending the action.   The limitation of the rule is that when the legal right is reasonably clear and there is no uncertainty of the principles of law involved, its establishment at law is not required but equity will ascertain the existence of the right as well as protect it.   This is especially true of illegal diversion of water and illegal interference with water rights.

Equity has disposed of numerous important water controversies in this jurisdiction in which questions of legal right were passed upon. *Peck v. Bailey* (1867), 8 Haw. 658; *Cha Fook v. Lau Piu*, 10 Haw. 308; *See Yick Wai Co. v. Ah Soong*, 13 Haw. 378; *Haw. Com. & Sug. Co. v. Wailuku Sug. Co.*, 14 Haw. 50; *Same v. Same*, 15 Haw. 675; *Lum Ah Lee v. Ah Soong*, 16 Haw. 163.

"It is not an objection to the jurisdiction of equity that legal questions are presented for consideration which might also arise in a court of law. If the controversy be one in which a court of equity only can afford the relief prayed for, its jurisdiction is unaffected by the character of the questions involved." *Holland v. Challen*, 110 U. S. 25.

*Manbeck v. Jones*, 190 Pa. 174; *Richmond v. Bennett*, 205 Pa. 475; *Perkins v. Foye*, 60 N. H. 496; *White v. Tide Water Oil Co.*, 50 N. J. Eq. 7.

The defendant claims that Mrs. Knudsen should be joined as defendant because "directly interested in obtaining or resisting the relief prayed for" and "materially interested in the subject matter." But neither of these facts is apparent from the bill which does not show that she had anything to do with the diversion of the water or asserts any right to it, but alleges that the water and water rights went to the plaintiff and its predecessors in title with the conveyance of her land to the Smiths and that she has since asserted no claim to them.

As no relief is sought against her and as she is not shown to be connected in interest with the subject matter of the suit, she is not a necessary party. *Union Mill Co. v. Dangberg*, 81 Fed. 73.

The defendant contends that the plaintiff's claim by adverse possession since the date of the conveyance of 1896 and also by virtue of the conveyance itself, with its apparent easements of water, is inconsistent. But a title may be pleaded as having been acquired in diverse ways in order that the party alleging title may have the benefit of proof showing that it was acquired

in any one of the ways. *Tuthill v. Skidmore,* 124 N. Y. 155. As long as the same kind of relief is asked by the bill the plaintiff may aver facts of a different nature which will equally support his application. Story, Eq. Pl., Sec. 254.

Several of the grounds of the demurrer relate to the form of the bill, the defendant claiming that the averments upon information and belief place in issue merely the information or belief. This is true of an averment of information and belief but not of averment of facts based upon information and belief. *Wells v. Bridgeport Hydraulic Co.,* 30 Conn. 323. "As a general thing injunctions ought not to issue upon statements of material matters made upon information and belief" (*McCandless v. Carter,* 18 Haw. 224), but when such averments are made it is unnecessary to state the source of the information or nature of the belief or that positive knowledge is not obtainable. The bill, however, in addition to the averments upon information and belief, contains a positive averment that for over twenty years the easterly branch of the Omao stream has been used exclusively, openly and continuously under a claim of right by the plaintiff and its predecessors in title, ten years of this term having elapsed since the date of the conveyance of September 1, 1896.

The objection that the mesne conveyances are not described by which the plaintiff acquired the property conveyed September 1, 1896, is not sustained. It is sufficient for the purposes of the bill that it avers that the plaintiff has obtained by mesne conveyances and owns the title secured by the conveyance. *Webber v. Gage,* 39 N. H. 185.

The facts averred in the bill, if proved or admitted, justify and require the relief sought and are averred with sufficient certainty, definiteness and clearness to inform the defendant of the nature of the claim against it and enable it to prepare its defense, and to enable the court to ascertain the plaintiff's

rights and render the proper decree if the bill should be adjudged true.

The averment that under the lease of 1874 the lessee, without opposition of the lessor, obtained control of and used the water which is claimed to have passed by the conveyance shows no right to the water other than such as may have been appurtenant to the lands, and in argument the plaintiff disclaims that it acquired any right thereby. It bases its right on the fact that at the date of the conveyance the water was in use upon the granted lands openly and under claim of right and therefore passed as an apparent easement or appurtenance; that the subsequent acquiescence of the grantor, as well as of the defendant, in such use is in the nature of a contemporaneous construction of the effect of the conveyance; that for the same reasons the portions of the ahupuaa then in possession of A. H. Smith & Co., which are excepted from the lease to the defendant of August 26, 1890, carried the water and rights then in use upon them without opposition by the lessor, and that at any rate the right has been acquired by prescription from continuous and open use since made under claim of ownership.

Upon the claim of contemporaneous construction the plaintiff cites *Lowrey v. Hawaii,* 206 U. S. 206, 222, the case citing *Brooklyn Life Ins. Co. v. Dutcher,* 95 U. S. 269, "There is no surer way to find out what the parties meant than to see what they have done."

Without passing upon the validity of the claim of contemporaneous construction, if it is true, as the bill avers, that the grantees at the date of the conveyance were using the waters upon the granted lands without opposition from the grantor and that the water was necessary for the use which was then made of the granted premises, the right to such use passed with the grant as an implied easement. *Dunklee v. Wilton R. R. Co.,* 24 N. H. 507; *Simmons v. Cloonan,* 81 N. Y. 557; *Quinlan v. Noble,* 75 Cal. 250; *O. R. & L. Co. v. Armstrong,*

18 Haw. 261. And see *Thomas v. Owen*, 20 L. R., Q. B. D., 225; 1 Tiffany, Real Property, Sec. 317.

The defendant claims that the averments of the plaintiff's exclusive use, control and enjoyment of the water and water rights and that it was entitled to them under the lease are conclusions of law and as such not admitted by the demurrer.

The averments in *Alnutt v. Leper*, 48 Mo. 318, and *Laffey v. Chapman*, 9 Colo. 304, cited by the defendant, were that the plaintiff was "entitled to the exclusive possession," and "entitled to the possession of said lode." *M'Closkey v. Barr*, 38 Fed. 165, also cited, held that alleging ownership in fee without stating how or from whom "does not state any fact or facts from which the court can see that the defendant is the owner;" that a plea that the defendant was in the open, notorious, continuous and exclusive possession as the sole owner, claiming and holding adversely to the complainants and all the world, was defective in not negativing the averment in the bill that certain of the complainants were under disability when their rights of possession accrued, and in not showing when the adverse possession commenced, and that the plea was defective in stating a legal conclusion without giving the material facts on which the conclusion rested. The same objections were held to apply to a plea that the complainants at the time of bringing the suit and long before were ousted and disseized and out of possession of the premises.

The cases cited to sustain these rulings refer to negotiable paper or choses in action. "On the other hand the allegation that the plaintiff is seized in fee simple is a sufficient allegation that he has the possession as well as the title." *Gage v. Kaufman*, 133 U. S. 472.

The facts on which the plaintiff's claim of ownership is based are sufficiently pleaded.

The averment of the facts upon which irreparable injury is asserted is amply sufficient. Permanent appropriation of

property may be an irreparable injury for which the law gives no adequate remedy such as equity gives. Upon this doctrine no other irreparable injury is required as ground for an injunction although the injury is not irreparable in any other sense. *Stevens v. R. R. Co.,* 20 N. J. Eq. 126, 130.

The demurrer was properly overruled. Decree affirmed.

*W. A. Kinney* and *R. B. Anderson* (*Kinney & Marx* on the brief) for plaintiff.

*H. E. Cooper* and *C. F. Clemons* (*Thompson & Clemons* on the brief) for defendant.